(Superior Court of Cincinnati.)
Special Term.

ANNIE A. LAWTON v. ANNIE A. LAWTON, EXECUTRIX, etc.

---

(1). Where there is the provision in a will, "I give and bequeath to my daughter, Annie, to be held in trust, my two-story frame house, * * * to collect all rents for a term of five years; pay all taxes and assessments; the remainder to be used as she sees fit; * * * after the expiration of five years this property to be sold and divided equally between six children, and the will as a whole showing that the testatrix had implicit confidence in her daughter, Annie, the reasonable intendment of the will is that this daughter should sell the property, and the law will imply that such power was conferred.

(2). A mortgage given by one of the six children upon all her right, title and interest in the above property is valid against the mortgagor's interest in the proceeds of the land thus devised to be sold.

---

DEMPSEY, J.

Plaintiff, as one of the heirs and devisees of Mary B. Lawton, deceased, filed her petition in partition against the other heirs and devisees, and also against herself, Annie A. Lawton, as executrix of said Mary B. Lawton. To plaintiff's petition, Annie A. Lawton, as executrix, filed her cross-petition wherein she averred that said Mary B. Lawton died December 1, 1892 leaving a last will and testament of which the cross-petitioner was appointed executrix, and which will was duly probated in Hamilton county, December 16, 1892. The material parts of said will are as follows:

First. I desire all my just debts and funeral expenses to be paid as soon as possible·after my decease.

Second. I give and bequeath tc my daughter, Annie A. Lawton, to be held in trust, my two-story frame house (describing the real estate in the petition). To collect all rents, for the term of five years and pay all taxes and assessments against said property. The remainder to be used as she sees fit.

Third. After the expiration of five years this property to be sold and divided equally between my six children.

Fourth. Any moneys or chattels remaining after my obligations are all paid, the remainder to be used by my daughter, Annie, as she sees fit.

I nominate and appoint Annie A. Lawton to be the executrix of this will without bond.

The cross-petitioner further avers that the five year term mentioned in said will devised to her expired December 1, 1897, and that she is in doubt as to the proper construction of, and her duty and power to sell said real estate and distribute the proceeds thereof, under item third of said will; that the real esate mentioned in the will is all testator had; that at the date of the execution of said will said testator had six children—John, Mary Ellen, Wiliam M., Margaret J., Thomas D. (now deceased) and Annie A; that there was another son, Richard J., who was considered dead, having disappeared at sea more than twenty-five years ago. The cross-petitioner then prays the judgment and direction of the court as to the true construction of said clause, and for an order to sell said property according to the statute in such cases made and provided.

The Herancourt Brewing Company was subsequently made a defendant in the

action and filed a cross-petition against the daughter, Margaret J., wherein it avers that on the 11th day of July, 1896, the said Margaret and her husband executed and delivered to said company their mortgage deed upon the premises described in the petition whereby they conveyed to said company "all their right, title and interest in and to said premises described in the petition." The premises described in the petition are the same described in the will. This mortgage was given to secure the payment of a $450.00 note, dated July 11, 1896, signed by said Margaret and her husband, and payable to the order of the company one day after date with six per cent. interest. The usual averments as to recording and default in payment of note are made, and prayer made for sale of premises and payment of said note and mortgage out of Margaret's interest in the proceeds.

Margaret answers to the cross-petition of the Brewing Company, wherein for a second defense she alleges that.

"At the time she gave said mortgage she believed she had title to the said real estate in said mortgage described, but she says that she now believes she was mistaken, and had no title thereto.

"She says that prior to the first day of December, 1892, her mother, Mary B. Lawton, was the owner of the property described in said mortgage, but that on said day her mother died, leaving a last will and testament which was duly admitted to probate, and that by her said will she bequeathed to her daughter, Annie A. Lawton, all of said real estate to be by her held in trust for five years, and after the expiration of said five years to sell said property and divide the proceeds equally between her children. Wherefore this defendant says that she had no title to said property at the time said mortgage was given, nor has she acquired any title thereto since, and she avers, therefore, that said mortgage, when so given, was void. She further says that at the death of her mother there were six children living, but since one of them, Thomas, has died, and his death occurred long before the expiration of said five years, and that at the expiration of said five years, and now, there are only five children of said Mary B. Lawton entitled to the proceeds of sale of said real estate, this defendant being entitled to one-fifth part thereof."

Under this defense she prays that said mortgage be declared void and of no operative effect as a lien on said property, and that one-fifth part of the proceeds thereof be awarded to her.

To this defense of Margaret the Brewing Company demurs, for that the allegations of said defense do not constitute a defense to the Brewing Company's cross-petition.

The first question to be determined is the proper construction of item third of the testatrix's will. It is the opinion of the court that by the first clause of item second of the will the legal estate of the property described in the petition and will was vested in Annie A. Lawton in fee simple in trust for certain purposes. By the second clause of the said second item Annie A. Lawton was to be her own *cestui que* trust for the period of five years. At the end of five years her sole beneficial interest in the property ceased. The property was then to be sold for the benefit of the six children. She still, however, retained the legal estate in trust. There is no express authority conferred upon her to sell; but it is hardly reasonable to infer from that omission that the testatrix, having carved her estate up into legal and equitable interests, still further intended to complicate it by requiring resort to the courts before it could be sold and divided. The language, of course, is rather obscure, but it is manifest from the whole will that the testatrix had full and implicit confidence in Annie A. Lawton, and the reasonable intendment to be drawn from the whole will is that testatrix, when she vested the legal title to the property in Annie A. in trust, also intended that she should be the one to sell the property; to carry out that intention the law will imply a power conferred upon her to make the sale, and such is the construction of the court.

Under the averments of the cross-petition of the executrix which are not put in issue by any of the parties pleading, it is beyond dispute that the beneficiaries of the sale were the six children known by the testatrix to be living at the time she executed the will. Still, as a son, Richard J., who is supposed to have been dead for more than twenty-five years, is made a party defendant, and service gotten upon him by publication; it would be better and safer for all parties to have some evidence introduced as to testatrix's knowledge and belief of that fact, so as to apply testatrix's description, "my six children," to the proper persons.

As to the question raised on the cross-petition of the Brewing Company, the answer thereto of Margaret, and the Brewing Company's demurrer, it was contended by counsel for Margaret in argument that the provisions of item third of the will which ordered the property sold and the proceeds divided, worked a conversion of the real estate into personalty, and that as to the distributees, the property to be distributed to them was not the realty, but the personalty into which it was to be converted, and that, hence, having mortgaged the realty, that mortgage would not avail to hold the personalty into which the realty was converted. A number of Pennsylvania cases are cited in support of this contention, and support it they certainly do. We have no decision of our own supreme court on the question. In the absence of an expression of our

own courts on the point, I do not feel myself bound by the Pennsylvania doctrine, for it seems to be founded in pure technicality and in total perversion of the equitable fiction of conversion. The mortgage in this case conveys all of Margaret's "right, title and interest in and to the premises" described in the will. Now, admitting that her interest is alone in the proceeds of the sale, yet it is still an interest that issues and arises out of that land, and it seems to me, that that in itself is an interest in the land. The doctrine of conversion was established in equity for the purposes of justice, and where the ends of justice are liable to be defeated by holding strictly to the doctrine, equity will not hold that for *all* purposes the property is to be treated as in its converted state. The *notional* conversion is not a *real* conversion. See Bispham on Equity, section 314; and this learned writer quotes the following extract from Brooks v. Bradley, L. R., 3 Ch., 674, which I think is peculiarly applicable to the case at bar:

"The estate," said Cairns, L. J., "is in the hands of the trustees, not for the benefit of those trustees, but for the benefit of the four persons between whom the proceeds of the estate are to be divided when the sale takes place. It may very well be that no one of these four persons could insist upon entering on the land, to taking the land, or enjoying the land *qua* land; and it may very well be that the only method for each one of them to make his enjoyment of the land productive, is by coming to the court and applying to have the sale carried into execution; but, nevertheless, the interest of each one of them is, in my opinion, an interest in the land, and it would be right to say, in equity that the land does not belong to the trustees, but to the four persons between whom the proceeds are to be divided."

And so in Foster's appeal also cited by Bispham: "Conversion is altogether a doctrine of equity; in law it has no being; it is admitted only for the accomplishment of equitable results. It follows, of necessity, that it is limited to its end."

These cases, it seems to me, lay down the just rule, and following them I am compelled to hold that Margaret still had an interest in the land devised to be sold which she could mortgage, and that the Brewing Company's mortgage is a valid one. Hence, the demurrer to the second defense of Margaret will be sustained. Whether Margaret mortgaged an undivided one-fifth or one-sixth interest will depend upon the evidence and is not passed upon here.

Under section 6137, Revised Statutes, the executrix herein would ordinarily have the right and power to sell the property in controversy herein without any order or supervision of the court; but

[COPYRIGHT, 1898, BY CARL G. JAHN.]

as the case has come into the equity side of this court for disposition as to certain important controverted questions, especially as to this mortgage, this court having rightfully acquired jurisdiction of the cause for one purpose will retain it for all purposes to the end that full justice be done. An order of sale may issue herein to Annie A. Lawton, as executrix and trustee under the will of said Mary B. Lawton, but the doings of said Annie A. Lawton under said order and the proceeds of sale shall be reported to this court for supervision and distribution.

M. W. Conway for plaintiff.

A. J. Cunningham, for Margaret Vonderheide.

Frank M. Gorman, for the Herancourt Brewing Company.